Karen Lynn **BALL**, Plaintiff,

v.

**COOK COUNTY SCHOOL DISTRICT,**
**et al., Defendants.**

No. 7:91–cv–115 (WDO).

United States District Court,
M.D. Georgia,
Valdosta Division.

June 13, 1995.

On Motion For Reconsideration
June 22, 1995.

Martin Louis Ellin, Jonathan Zimring, Atlanta, GA, for plaintiff.

Howard Eugene McClain, Adel, GA, William A. Turner, Jr., O. Wayne Ellerbee, Valdosta, GA, for defendants.

### ORDER

OWENS, District Judge.

Before the court is defendant Leichner's motion for summary judgment, predicated upon qualified immunity and allegations of nonliability in a personal capacity. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

## I. INTRODUCTION

Plaintiff's complaint, as amended, consists of five counts. At issue here are those portions of counts one through four that assert the individual liability of defendant Leichner. Count One accuses defendant of having violated Title VII, on account of which plaintiff seeks compensatory and punitive damages. Defendant is similarly charged under Counts Two and Three for violations of 42 U.S.C. § 1983. Finally, Count Four raises pendent state claims.

When initially sued by plaintiff, defendant was superintendent of defendant school district. The original complaint only sought to impose liability upon Leichner in his official capacity; however, the court's allowance of a subsequent amendment to the complaint resulted in the present situation, where the current superintendent is being sued in his official capacity and Leichner seeks dismissal of the suit against him individually. Plaintiff contends that Leichner and the School Board adopted an affirmative action plan containing certain hiring goals. After adoption of the plan, a black male was hired in place of a white female, plaintiff. Plaintiff now sues.

### A. Title VII

■ In the recent case of *Smith v. Lomax*, 45 F.3d 402 (11th Cir.1995), the Eleventh Circuit found that the Chairman of the Fulton County Board of Commissioners and a Fulton County Commissioner could not be liable for purposes of either the Age Discrimination in Employment Act ("ADEA") or Title VII: "Read literally, counts two and three [ADEA and Title VII, respectively] seek the same relief against Lomax and Hightower in their individual capacities. They could not, however, be considered her employer; Fulton County is her employer. Accordingly, they cannot be held liable under the ADEA or Title VII." *Smith*, 45 F.3d at 403 n. 4 (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991)); *see also EEOC v. AIC Security Investigations*, 55 F.3d 1276 (7th Cir.1995) (collecting cases from four circuits that have rejected individual liability under Title VII, and noting only one circuit has accepted individual liability thereunder).

In light of the overwhelming authority on point, and in the face of binding precedent, the court **GRANTS** defendant's summary judgment motion as to individual liability under Title VII.

### B. § 1981/1983 Liability

■ During a status conference before the court on February 27, 1995, the court engaged counsel to explain the necessity of maintaining suit against Minner Baldwin, personnel director for defendant county, in her individual capacity. Plaintiff's expressed concern was that defendant school board would attempt to defend itself on the basis that defendant Baldwin had acted outside the scope of her authority while participating in the challenged hiring decision.

However, in response to the court's query of whether it was defendant county's tact to suggest defendant Baldwin had acted outside her authority, counsel for defendant county represented to the court that it was not their defense to "point the finger at Ms. Baldwin". Based upon this, the court dismissed her without prejudice. Discussion then turned to Leichner, for whose actions the county's attorney admitted the county "would be liable for what he did or failed to do".

Now that plaintiff has taken the deposition of a representative member of the school board (Frank Moody), she suggests that the prospect for the school board's use of the defense that Leichner was acting outside the scope of his duties is very real. In her statement of facts demonstrating a question as to whether defendant Leichner acted within the scope of his responsibility, plaintiff specifically cites to Mr. Moody's deposition four times: that Leichner had a duty to insure full, equal, and fair competition for the position to be filled; that Leichner's failure to satisfy such obligations was a breach of duty to defendant school board; that Leichner had supervisory authority over Baldwin; and that Leichner did not have the authority to ignore board regulations or policy.

Having read the Moody deposition, the court does not find any basis for individual liability on defendant Leichner's behalf, much for the same reasons as the court previously found defendant Baldwin to be

incapable of personal liability. *See* Tr. at 19–22 (2/27/95). Although plaintiff's counsel expresses concern that defendant county/school board might attempt to establish the liability of Leichner and Baldwin individually as a defense, the court finds no basis in fact for that concern, especially in light of defense counsel's representation to the court that such a tactic would not be employed. *See* Tr. at 18–19.

Accordingly, defendant Leichner is **DISMISSED WITHOUT PREJUDICE** in his individual capacity on all claims brought under § 1981 or § 1983.[1]

### C. Pendent State Claims

In the court's considered judgment, pendent state claims raised against defendant Leichner in his individual capacity "substantially predominate" as there are no federal claims remaining against him in his individual capacity. As such pendent state claims against Leichner in his individual capacity are **DISMISSED.** In any event, this court dismissed all pendent state claims. *See* Order dated 2/28/95 (tab # 67).

SO ORDERED.

### ON MOTION FOR RECONSIDERATION

Before the court is plaintiff's motion for reconsideration of the June 13, 1995 order that granted defendant Leichner's motion for summary judgment. Alternatively, plaintiff requests entry of final judgment in Leichner's favor so that an appeal may be pursued. Specifically, plaintiff asks the court to revisit that part of the order dismissing Leichner without prejudice in his individual capacity as to claims under § 1981 or § 1983. Because the practical considerations upon which the court previously relied were unconvincing to plaintiff, perhaps the legal foundations laid

---

1. The court also notes, without so finding, that qualified immunity would in any event shield this defendant from personal liability.

   Government actors performing discretionary functions are entitled to qualified immunity from civil trials for money damages and may not be held liable in their individual capacity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.

by this order denying reconsideration will suffice.

■ Government officials who perform discretionary functions are insulated from civil trials and from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc). This is the generic statement of "qualified immunity", which is the usual rule. "[O]nly in exceptional cases will government actors have no shield against claims made against them in their *individual capacities.*" *Id.* at 1149. The en banc Eleventh Circuit further elaborated upon the contours of qualified immunity:

> Unless a government agent's act is so obviously wrong, in light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. [cit.] Because qualified immunity shields government actors in *all but exceptional cases,* courts should think long and hard before stripping defendants of immunity.
>
> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law. [cit.]
>
> \*    \*    \*    \*    \*    \*
>
> [Thus,] "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."

\*    \*    \*    \*    \*    \*

*D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir.1995) (internal quotation marks omitted). Based upon many years' experience administering affirmative action plans to which certain municipalities were forced to subscribe, the court is of the opinion that, clearly established law notwithstanding, any reasonable person acting under the dictates of an affirmative action plan would have believed that adherence to principles of the plan was constitutionally appropriate.

For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.* *Id.* at 1149–50 (former emphasis supplied). *See also Hartsfield v. Lemacks,* 50 F.3d 950, 953 (11th Cir.1995) ("only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*"); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1523 (11th Cir.1995) (discriminatory discharge case; court said "Except under rare circumstances government employees will have qualified immunity from suits against them in their *individual capacities.*"); *McCoy v. Webster,* 47 F.3d 404, 407 (11th Cir.1995) (per curiam) (pre-existing law must compel conclusion that federal law is being violated).

█ The question for the court then becomes, "did clearly established law compel the conclusion by every like-situated, reasonable government agent that adherence to, or action taken in conformity with, affirmative actions goals or an affirmative action plan that had not been tested for its validity constituted a violation of federal law?" The court initially notes that it is plaintiff's position that the actions taken by defendants were pursuant to an affirmative action plan. In answering this question, this court draws upon not only the benefit of analogous case-law, but also from an intimate familiarity with the adoption, administration, and oversight of affirmative action plans and/or goals throughout this part of the country. As both a matter of law and common sense, the court finds that a public official—whether faced with a defined set of affirmative action goals or mere policy suggestions—would not have believed he was violating the law by acting pursuant thereto.

Such plans/goals have become commonplace in public administration in the South,

and to suggest that action taken pursuant thereto should have been interpreted by a public official as violative of someone's constitutional rights is pure folly. In *Stubblefield v. City of Jackson, Miss.,* 871 F.Supp. 903 (S.D.Miss.1994),[1] the district court was faced with almost the precise question put to the court by plaintiff. In response, the district court there found:

> [T]he determination of whether Mayor Ditto's actions constitute acceptable or unacceptable affirmative action may ultimately be difficult. However, whether Mayor Ditto's actions were, in law and in fact, permissible and lawful affirmative action is not the question before the court; rather, the question for the court is whether he could reasonably have thought they were. Plaintiff argues that Ditto could not have believed his actions to be lawful since the consent decree pursuant to which Ditto claims he acted did not even mention the position of chief of police. He reasons, therefore, that the position was not covered under the affirmative action plan applicable to the JPD and that Ditto's actions were thus clearly inappropriate. In the court's opinion, though, Ditto could reasonably have believed his actions were authorized under the plan. The consent decree directed defendants to use their "best efforts to increase the black distribution rate in job classifications in which black persons are statistically underrepresented and to employ black persons in job classifications and/or divisions, department[s], and bureaus in which no black person has ever been employed." One could certainly reasonably construe this provision as encompassing the police chief position. In summary, therefore, the court finds that Mayor Ditto could reasonably have believed that his preference for hiring a black police chief was within the bounds of the law....

*Stubblefield,* 871 F.Supp. at 908. *See also Cygnar v. City of Chicago,* 865 F.2d 827, 844 (7th Cir.1989) (qualified immunity for official

1. The source of the clearly established law to which the court must look is unclear. *Hartsfield v. Lemacks,* 50 F.3d 950, 953 n. 10 (11th Cir. 1995) (comparing cases that indicate contrasting sources). However, in the absence of any precedent on point in this circuit, or from the Su-

preme Court, it appears that the wisest course of action is to look to the courts of appeals and the district court. *See Greason v. Kemp,* 891 F.2d 829, 833 (11th Cir.1990) ("[W]e look to the law established by the Supreme Court, the courts of appeals, and the district courts.").

496

acting pursuant to an embryonic affirmative action plan); *Auriemma v. Rice,* 910 F.2d 1449, 1456–57 (7th Cir.1990) (en banc) (distinguishing *Cygnar* on the basis that official in that case was acting pursuant to "an embryonic affirmative action plan or purpose even though deficient"). *McNamara v. City of Chicago,* 867 F.Supp. 739, 746 (N.D.Ill. 1994); *Petit v. City of Chicago,* 766 F.Supp. 607, 615–16 (N.D.Ill.1991); *Chicago Fire Fighters Union Local No. 2 v. Washington,* 736 F.Supp. 923, 933–34 (N.D.Ill.1990).

Accordingly, the court finds that **DEFENDANT LEICHNER IS ENTITLED TO QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY.** Furthermore, the court **REFUSES TO ENTER FINAL JUDGMENT AS TO DEFENDANT LEICHNER.**

**SO ORDERED.**