[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15837
_____

D.C. Docket No. 1:15-cv-23002-CMA


BERNA KELLNER,

                                        Plaintiff - Appellant,

versus

NCL (BAHAMAS), LTD.,
a Bermuda Company,
d.b.a. Norwegian Cruise Line,

                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 29, 2018)

Before MARCUS and WILSON, Circuit Judges, and HOWARD,* District Judge.

PER CURIAM:

While participating in an organized balloon relay onboard a cruise ship, passenger Berna Kellner slipped on a piece of popped balloon and fell, severely injuring herself. She sued the ship owner, NCL (Bahamas) Ltd., in federal court, alleging that NCL negligently failed to attend to the rogue balloon fragment, thereby causing her injuries. After Kellner rested at trial, the district court granted NCL's motion for a directed verdict on two distinct grounds, namely that Kellner presented insufficient evidence of (1) causation and (2) damages. On appeal, Kellner attacks only the district court's holding on causation. Because Kellner abandoned any argument targeting an independent basis for the district court's judgment, we must affirm.

## I.

In April 2015, Berna Kellner and her husband boarded a cruise ship owned by NCL. During the cruise, they participated in a balloon relay, wherein the passengers divided into teams of two, one teammate walked across the dance floor to the other teammate with a balloon in between her legs, and both teammates tried to pop the balloon. While making her way across the dance floor with a balloon lodged between her thighs, Kellner slipped on a piece of popped balloon that had

---

* Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

fallen to the floor. Crewmembers helped her up, and she was able to finish the relay with some assistance. Kellner sought treatment in the ship's medical center, where she obtained an x-ray indicating that she had ruptured her Achilles tendon. When she returned home, she underwent orthopedic surgery.

In August 2015, Kellner sued NCL in the United States District Court for the Southern District of Florida, claiming that NCL's negligent failure to clean the balloon pieces off the floor caused her Achilles tendon to rupture. She sought compensatory damages for her bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care expenses, loss of important bodily functions, and substantial and permanent scarring or disfigurement. In January 2016, Kellner disclosed as an expert witness Dr. Mauricio Herrera, a physician who had examined her injuries after her surgery, and who would offer the opinion that Kellner's fall during the balloon relay caused her Achilles tendon to rupture.

NCL moved to exclude Dr. Herrera's testimony, claiming that his causation opinion was inadequately supported under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). NCL argued that Dr. Herrera had not identified a reliable methodology for establishing causation, noting that he based his opinion on Kellner's own account of the accident. NCL further claimed that Dr. Herrera neglected to consider alternative causes for Kellner's injury, or to

3

articulate any methodology for excluding alternative causes. It added that Dr. Herrera did not review Kellner's medical records that predated the accident, which indicated that she suffered from a variety of medical conditions due to previous injuries. Finally, NCL argued that Dr. Herrera's testimony would confuse the jury since it was not grounded in medical science. The district court denied NCL's motion in part. It concluded that Dr. Herrera's testimony would be helpful to the jury. But it permitted NCL to conduct a voir dire of Dr. Herrera, during trial and outside the jury's presence, in order to determine the reliability of his causation opinion and the methodology behind it.

During the voir dire, Dr. Herrera reiterated his opinion that Kellner's cruise-ship slip and fall caused her Achilles tendon to rupture. He reached that conclusion by relying on his physical examination of Kellner following her surgery; Kellner's medical history; her postaccident medical records; records from the cruise ship doctor; an MRI report created shortly after Kellner's fall; a report from a postaccident toe surgery she underwent; a security video of the accident recorded on the cruise ship; and the defense expert's report. He admitted, however, that he had never personally examined the images generated by Kellner's MRI, nor was he aware that Kellner had a history of falling incidents.

At the close of the voir dire, the district court held that Dr. Herrera's testimony was inadmissible under Daubert because he failed to ground his medical

4

opinions about causation on a reliable foundation or methodology. The court determined that Dr. Herrera's testimony was "based simply upon looking at a video and listening to [Kellner's] account of what happened," and viewing an MRI report without examining the MRI images. The court also concluded that Dr. Herrera could not testify about damages.

The parties turned to Kellner's evidence of damages. NCL objected to the admission of Kellner's medical bills and records because they were unauthenticated, unclear, and unsubstantiated. The district court agreed, ruling that Kellner was unqualified to introduce her medical bills in evidence because she needed expert testimony to establish that her expenses were reasonable and necessary. Kellner gave a proffer on damages. She explained that, if permitted, she would testify that she was examined and x-rayed by the cruise ship's medical staff, who diagnosed her with a ruptured Achilles tendon. On their recommendation, Kellner had orthopedic surgery when she returned home, which rendered her wheelchair-bound for several months during which time she experienced severe pain.

The district court explained that, even if Kellner testified about the treatment she received and the suffering she endured, she remained vulnerable to a motion for directed verdict because she had offered no evidence of either causation or damages. Her causation evidence was deficient because, without Dr. Herrera's

5

testimony, she lacked an expert opinion to tie the fall to the ruptured Achilles tendon. And her damages evidence was wanting because, although she experienced severe pain and suffering, she could not prove quantifiable damages since she was unqualified to introduce her medical expenses. After Kellner rested at trial, NCL moved for a directed verdict. The district court granted the motion, holding that Kellner presented insufficient evidence of causation and damages, thereby entitling NCL to judgment as a matter of law.

Kellner filed this timely appeal in our Court.

## II.

We review de novo a district court's grant of judgment as a matter of law. Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 905 (11th Cir. 1998). "[A] court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Commodores Entm't Corp. v. McClary, 879 F.3d 1114, 1130 (11th Cir. 2018) (internal quotation omitted). When a district court's judgment is based on multiple independent grounds, "an appellant must convince us that every stated ground for the judgment against him is incorrect." Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014). Otherwise, the judgment must be affirmed. Id.

In order to prevail on her negligence claim under Florida law, Kellner was required to establish four elements by a preponderance of the evidence: (1) a duty, recognized by law, requiring NCL to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the breach and the resulting injury; and (4) actual loss or damage. Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1227 (Fla. 2010). The district court granted NCL's motion for a directed verdict on two independent grounds: the failure to present sufficient evidence on causation or on damages. Since a plaintiff asserting a negligence claim under Florida law must prove both causation and damages, a failure to present sufficient evidence of either element warrants entry of a directed verdict for the defendant. See, e.g., R.J. Reynolds Tobacco Co. v. Brown, 70 So. 3d 707, 715 (Fla. App. 2011). Therefore, on appeal, Kellner was required to challenge both foundations for the judgment.

However, in her initial brief, she challenged only the district court's ruling on causation, claiming that the district court had erroneously excluded Dr. Herrera's expert testimony under Daubert. She did not address the sufficiency of her damages evidence. Consequently, Kellner abandoned that challenge and we are required to affirm. We have no occasion to address Kellner's appeal from the district court's Daubert ruling on Dr. Herrera's causation opinion, since any consideration of that issue would be futile. Even if Kellner had prevailed on that

score, she still could not succeed in overturning the directed verdict because of her failure to challenge the district court's ruling on damages.

If an appellant fails to properly challenge an independent basis for the district court's judgment, "he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." Sapuppo, 739 F.3d at 680. We have repeatedly held that, in order to preserve an argument on appeal, the appellant must clearly advance the argument in her initial brief. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants [us] to address should be specifically and clearly identified in the brief . . . . Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned."); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned."); Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (stating that it is well settled in this circuit that a party abandons an issue "by failing to list or otherwise state it as an issue on appeal"); United States v. Willis, 649 F.3d 1248, 1254 (11th Cir. 2011) ("A party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. . . . Where a

8

party fails to abide by this simple requirement, he has waived his right to have the court consider that argument.") (quotations and citations omitted).

An appellant may properly raise an argument in her initial brief by, for example, devoting a discrete section to it and supporting it with discussion, argumentation, and citations to authorities and record excerpts. Fed. R. App. P. 28(a)(8) ("[T]he argument [section of the appellant's brief] must contain[ ] . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.") (emphasis added); Sapuppo, 739 F.3d at 681; Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009). Merely passively referencing or perfunctorily raising the argument will not suffice. Sapuppo, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); Singh, 561 F.3d at 1278 ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal"); Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) ("[An] issue raised perfunctorily without citation to authority constitutes waiver of [the] issue.").

Far from a technicality, the requirement that an appellant clearly present all issues in her initial brief serves vital interests. It promotes "careful and correct

decision making," Hamilton, 680 F.3d at 1319, and "avoid[s] confusion as to the issues that are in play and those that are not," Access Now, 385 F.3d at 1330 (quoting United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003)). It provides the opposing party with the opportunity to analyze and respond to her adversary's contentions. Hamilton, 680 F.3d at 1319. It enables the appellate court to prepare for oral argument. Id. And it ensures the proper operation of our adversarial system by securing the litigants' prerogative to frame the questions under consideration on appeal. See Access Now, 385 F.3d at 1330 ("Indeed, evaluating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system.").

In ruling on NCL's motion for a directed verdict, the district court explained, "The Court declines to grant a directed verdict on [liability]; however, it agrees Plaintiff has failed to satisfy her burden regarding [causation] and [damages]." The court clearly based its judgment on two independent grounds. Yet Kellner devoted the entirety of her initial brief to challenging the district court's causation ruling; she failed to challenge the district court's holding on damages in any way. Indeed, Kellner's only reference to the district court's damages ruling in the Argument section of her initial brief was the following:

> The district court granted Defendant's motion for directed verdict on the issue of causation and damages. Because the ruling that excluded Dr. Herrera should be reversed, so also should the ruling granting a directed verdict for the Defendant.

10

Kellner did not present a reasoned, well-supported argument in her initial brief challenging the district court's ruling on damages. She offered no analysis, argumentation, or citations to authorities or record excerpts. She failed to devote a "discrete section of [her] argument" to damages. Sapuppo, 739 F.3d at 681. Indeed, throughout the entirety of the Argument section of her initial brief, she raised the issue of damages only "in a perfunctory manner without supporting arguments and authority." Id. Her failure to present the argument in her initial brief deprived NCL of an opportunity to adequately respond. Hamilton, 680 F.3d at 1319. And if we were to address the argument, we would supplant the parties' role in shaping the issues before us on appeal. See Access Now, 385 F.3d at 1330.

To be sure, Kellner briefly discussed the court's damages holding in the Facts section of her brief:

> The ruling [on NCL's motion for directed verdict] essentially excised the causation element from Plaintiff's negligence lawsuit. Thus, while the district court permitted Plaintiff to testify about her surgery and treatment, she was prohibited from introducing evidence of damages related to the Achilles injury because there was no longer any available causation evidence to tie the causation and damages elements. In the absence of the Daubert ruling, which would have permitted Dr. Herrera's causation testimony, Plaintiff would have introduced testimony from Ms. Kellner and Dr. Herrera as to damages, including pain and suffering, and would have sought to introduce medical records related to the same.

Yet, in that discussion, she addressed only the type of damages evidence she sought to introduce at trial. She did not mention, let alone explicate in any detail,

11

why the district court may have erred in holding that Kellner's damages evidence was insufficient as a matter of law. She never said, for example, that the district court erred on damages because, even in the absence of Dr. Herrera's testimony, she offered testimony about the pain and suffering she had sustained, or indeed about any other kind of noneconomic injury. Her fleeting discussion of damages in the Facts section of her brief did not suffice to preserve the argument.

Moreover, while Kellner developed an argument on damages in her reply brief, it is by now clear that we cannot consider arguments raised for the first time in a reply brief. United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief."); KMS Rest. Corp. v. Wendy's Int'l, Inc., 361 F.3d 1321, 1328 n.4 (11th Cir. 2004) ("[A] party cannot argue an issue in its reply brief that was not preserved in its initial brief."); United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002) ("We need not address this issue because Whitesell raises it for the first time in his reply brief."); United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."); United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999) (concluding that the appellant "waived" a claim because he raised it for the first time in his reply brief); United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for

12

the first time in a reply brief). This rule, too, serves to clarify the scope of the issues under appellate review, and to afford the appellee an opportunity to address them. Because Kellner failed to preserve the argument in her initial brief, we cannot review it even though it appears in her reply brief.

We have recognized five exceptions to the rule that an appellant abandons all arguments not properly presented in her initial brief. We may consider the abandoned argument if (1) it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice; (2) the appellant raises an objection to an order that she had no opportunity to raise in the district court; (3) substantial justice is at stake; (4) the resolution of the abandoned claim is beyond any doubt; or (5) the argument presents significant questions of general impact or of great public concern. See Access Now, 385 F.3d at 1332. None of those exceptions apply. Kellner makes no mention of them in her reply brief and, even if she did, we cannot see how any of them could aid her here.

The long and short of it is that Kellner abandoned any challenge to the district court's damages ruling, which formed an independent basis for the court's judgment. We are, therefore, obliged to affirm the judgment of the district court.

**AFFIRMED.**

13

WILSON, Circuit Judge, concurring:

I agree with the majority's finding that Kellner's brief on appeal ruined any chance of success she had in this court. However, I write separately to draw attention to an often-overlooked avenue for demonstrating causation that may have been available to Kellner below. She also neglected to raise this argument in her appellate briefing, so she has waived it as well.

Some of our recent cases from our non-argument calendar have noted that, in cruise-ship personal injury cases, "[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *See, e.g.*, *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954–55 (11th Cir. 2017) (per curiam). In support, this line of cases cites the district court order on appeal here, among other authorities. *See id.* (citing *Kellner v. NCL (Bahamas), Ltd.*, No. 15-23002-CIV-ALTONAGA, 2016 WL 4440510 (S.D. Fla. Aug. 22, 2016)). This rule is based on Florida state law. *See Vero Beach Care Ctr. v. Ricks*, 476 So.2d 262, 264 (Fla. 1st DCA 1985) ("[L]ay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable.").

The Florida courts have analyzed a range of ailments under this rule, observing that "a construction worker who had been struck on the head by a truss"

14

or an employee whose "arm [was] severed by a machine" would not need an expert to show causation, while those with a "psychiatric condition," a "soft tissue injury," or "hypertension" would require an expert. *See Closet Maid v. Sykes*, 763 So.2d 377, 382–83 (Fla. 1st DCA 2000) (collecting cases). The district court here found that Kellner's injuries were "not readily observable such that they would be susceptible to evaluation by lay persons," and cited *Crest Products* for support. *Kellner*, 2016 WL 4440510, at \*2 (citing *Crest Prods. v. Louise*, 593 So.2d 1075, 1077 (Fla. 1st DCA 1992)). But the *Crest Products* plaintiff suffered lower back and leg pain, *see* 593 So.2d at 1077, invisible to the human eye, while Kellner suffered a foot injury that was apparent in the record photographs.

Accordingly, I would have been open to an argument that Kellner's injuries may have been observable to a lay person, and thus Dr. Herrera's exclusion may not have doomed her case.[1] Kellner could have also perhaps argued that her own testimony would have been sufficient to establish damages. *Cf., e.g.*, *Button v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-23624-UU, 2013 WL 12064491, at \*2 (S.D. Fla. July 23, 2013) ("[I]t is well-established under Florida law that in tort actions alleging a physical injury . . . lay testimony from a personal injury claimant is sufficient to show mental anguish, loss of enjoyment for life, or other non-economic damages."). However, since Kellner did not raise these arguments on

---

[1] The record also contained video of the incident that allegedly caused Kellner's injury.

15

appeal—and it is unclear to what extent she made these arguments in the district court—I agree with the majority's affirmance.