492 So.2d 1055 (1986)
John MAREK, Appellant,
v.
STATE of Florida, Appellee.
No. 65821.
Supreme Court of Florida.
June 26, 1986.
Rehearing Denied September 8, 1986.
*1056 Bruce H. Little, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Carolyn V. McCann, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The appellant, John Marek, appeals his convictions of first-degree murder, kidnapping, attempted burglary with an assault, and two counts of battery, and his death sentence imposed by the trial judge in accordance with the jury's sentence recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm all of appellant's convictions and his sentence of death.
This tragic incident began on June 16, 1983, when the victim and her female companion were returning home from a vacation. The victim's companion testified that when the car in which the two women were riding broke down on the Florida Turnpike near Jupiter, appellant, who was driving a pickup truck, pulled over; that appellant was talkative and friendly; that he unsuccessfully attempted to fix the car and then offered to take one of the women, but not both, to a service station; that at approximately 11:30 p.m. the victim left with appellant and Raymond Wigley, who was an occupant of the pickup truck; that Wigley had been present during a part of appellant's conversation with the two women but remained silent; and that, during the five days she and the victim were together on their vacation, the victim did not have sexual intercourse.
At approximately 3:35 a.m. the following morning, a police officer patrolling Dania Beach noticed two men walking from the vicinity of a lifeguard shack towards a Ford pickup truck. He testified that he spoke to the men, who identified themselves as Marek and Wigley, for about forty minutes. He noted that appellant was the more dominant of the two; that appellant joked with the officer and interrupted Wigley every time Wigley attempted to speak; and that appellant drove the truck away from the beach when the conversation was completed. Later that morning, the nude body of the 47-year-old victim was discovered on the observation deck of the lifeguard shack. According to medical testimony, the victim had been strangled between approximately 3:00 and 3:30 a.m., and was probably conscious for one minute after the ligature was applied to her neck. Her body was extensively bruised and her finger and pubic hairs had been burned. The medical examiner testified that he found sperm in the victim's cervix and believed she had had sexual intercourse after 11:30 p.m. on June 16. Bruises indicated that the victim had been kicked with a great deal of force. According to the examiner, some of the victim's injuries indicated she had been dragged up to the roof of the lifeguard shack and into the observation tower.
Police issued a "be-on-the-lookout" bulletin to law enforcement agencies for appellant and Wigley. On the evening of June 17, a Daytona Beach police officer, as a result of that bulletin, stopped Wigley, who was driving a truck on Daytona Beach, and found a small automatic pistol in the truck's glove compartment. Approximately one-half hour later in the same vicinity, police took appellant into custody. The victim's jewelry was later found in the truck.
A fingerprint expert testified that six prints lifted from the lifeguard shack matched appellant's fingerprints, and one matched Wigley's. Only appellant's print was found inside the observation deck, where the body was discovered.
The appellant testified in his own behalf that he and Wigley had traveled together from Texas to Florida for a vacation; that he had attempted to fix the victim's disabled *1057 vehicle and had offered to take the women to a filling station; that he fell asleep after the victim got into the truck and that when he awoke, she was gone; that he went back to sleep and woke up at the beach, where he found Wigley on the observation deck of the lifeguard shack; and that it was dark in the shack and he did not see the victim's body. Appellant admitted that after he had been incarcerated and a detective told him he had "made it to the big time," he responded: "S.O.B. must have told all."
The jury convicted appellant of first-degree murder, kidnapping with the intent to commit a sexual battery, attempted burglary, and two counts of battery. Consistent with the 10-2 jury recommendation, the trial judge imposed the death sentence. He found no mitigating circumstances and found the following four aggravating circumstances: (1) appellant was contemporaneously convicted of kidnapping, a felony involving the use or threat of violence; (2) appellant committed the murder while engaged in the commission of attempted burglary with intent to commit sexual battery and in the course thereof committed an assault; (3) appellant committed the murder for pecuniary gain; and (4) the murder was heinous, atrocious, and cruel. In a separate trial completed prior to Marek's trial, a jury convicted Wigley of first-degree murder, kidnapping, burglary, and sexual battery, and recommended the imposition of a life sentence for the murder. The trial judge sentenced Wigley to life in prison in accordance with the jury's recommendation.

Guilt Phase
Appellant challenges his convictions on three grounds. He first contends that his convictions should be vacated on the ground that the trial judge erred in refusing to grant appellant's motion for a mistrial raised when the policeman who arrested Wigley on Daytona Beach testified that he found a gun in the truck's glove compartment. Although the trial judge sustained defense counsel's objection as to relevance, he denied appellant's motion for mistrial, and instead instructed the jury as follows:
[T]here was indication by the witness that he found some type of a gun or firearm in this car and after discussion with counsel there is no evidence that I can see that would make that item relevant to this case, so at this point I would like you to do the best you can to forget it. In fact, I'll instruct you to forget that there was a firearm in that particular vehicle. It has no bearing on this case at this point and just disregard it.
Appellant argues that this instruction was insufficient on the ground that no nexus existed between appellant and the firearm. We find that the evidence of the gun's discovery was not prejudicial to appellant under the circumstances of this case. Further, a motion for mistrial is directed to the sound discretion of the trial court and should be granted only when it is necessary to ensure that the defendant receives a fair trial. See Ferguson v. State, 417 So.2d 639 (Fla. 1982); Salvatore v. State, 366 So.2d 745 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). We find the trial court correctly denied the motion for mistrial and conclude that, in any event, the curative instruction given in this case was sufficient to dissipate any prejudicial effects of this testimony. See Jennings v. State, 453 So.2d 1109 (Fla. 1984); Rivers v. State, 226 So.2d 337 (Fla. 1969).
Appellant next argues that the trial judge erred in denying appellant's motion for judgment of acquittal founded on an asserted lack of evidence of premeditation or evidence to indicate that the killing took place during the commission of a felony. We find the record of appellant's trial is replete with evidence which justifies the conclusion that appellant committed premeditated murder.
In his third point, appellant contends that he was denied his right to a fair and impartial jury because the jury viewed a film entitled, "You, the Juror," which, according to appellant, contained misstatements of law, introduced legal points when *1058 appellant's counsel was not present, and portrayed the criminal defendant in the film as a "seedy-looking" individual. We find the trial judge correctly denied the motion to disqualify the entire jury panel, and conclude that the general orientation film in question did not prejudice appellant.

Sentencing Phase
Appellant challenges his death sentence on four grounds. Appellant first contends that the trial judge erred in sentencing him to death in view of the fact that the judge had previously sentenced Wigley to life in prison for the same offense. This disparate sentencing, according to appellant, should be prohibited as cruel and unusual, arbitrary, and unequal. We reject this argument. In prior cases we have approved the imposition of the death sentence when the circumstances indicate that the defendant was the dominating force behind the homicide, even though the defendant's accomplice received a life sentence for participation in the same crime. See Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). The evidence in this case clearly established that appellant, not Wigley, was the dominant actor in this criminal episode. Both appellant and the victim's traveling companion testified that appellant talked to the two women for approximately forty-five minutes after he stopped, purportedly to aid them. During most of this conversation, Wigley remained in the truck. When Wigley got out of the truck to join appellant, he remained silent. Appellant, not Wigley, persuaded the victim to get in the truck with the two men. That evidence was reinforced by the testimony of three witnesses who came into contact with the appellant and Wigley on the beach at approximately the time of the murder, which indicated that appellant appeared to be the more dominant of the two men. Finally, only appellant's fingerprint was found inside the observation deck where the body was discovered. This evidence, in our view, justifies a conclusion that appellant was the dominant participant in this crime.
Appellant next challenges all four aggravating circumstances on which the trial judge based the death sentence. We find that none of appellant's challenges to the aggravating factors have merit. We also reject appellant's argument that because his conviction was predicated largely on circumstantial evidence, the nature of the evidence should be considered as a mitigating factor. See Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).
Appellant next contends the jury should have been instructed that Wigley had received a life sentence recommendation in his trial, thereby eliminating the need for appellant to present this evidence to the jury which would allow the state an opportunity to present rebuttal evidence. We find this contention to be without merit. We previously discussed in this opinion disparate sentences for codefendants. Distinguishing the conduct of codefendants to justify different sentences is an appropriate issue in the penalty phase that is properly addressed through the development of evidentiary facts.
We reject appellant's argument that death by electrocution constitutes cruel and unusual punishment. See Medina v. State, 466 So.2d 1046 (Fla. 1985); Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). In conclusion, we have reviewed appellant's sentence in light of sentences imposed in similar cases and have determined that his death sentence is proportionately correct. See, e.g., Bertolotti v. State, 476 So.2d 130 (Fla. 1985); Gore v. State, 475 So.2d 1205 (Fla. 1985); Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 104 S.Ct. 3559, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984).
*1059 For the reasons expressed, we affirm the appellant's convictions and sentences, including the imposition of the death sentence.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.