**John Richard MAREK, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Respondent–Appellee.**

No. 90–6083.

United States Court of Appeals, Eleventh Circuit.

Aug. 14, 1995.

Martin J. McClain, Office of Capital Collateral Representative, Tallahassee, FL, for appellant.

Carolyn M. Snurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for appellee.

Before EDMONDSON, BIRCH and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

John Richard Marek ("Marek"), a Florida prison inmate convicted in 1984 of first-degree murder, kidnapping, attempted burglary with an assault, and two counts of battery, appeals the district court's judgment denying his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. After a thorough review of the record and briefs, and after hearing oral argument, we conclude that the district court correctly denied habeas relief and, accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

Following Marek's conviction and penalty phase proceeding, the jury recommended a sentence of death. After independent consideration of the facts of the case, the trial judge followed the recommendation of the jury and imposed a death sentence, finding four statutory aggravating circumstances and no mitigating circumstances applicable. Marek's convictions and sentence of death were

affirmed on direct appeal. *Marek v. State,* 492 So.2d 1055 (Fla.1986), 626 So.2d 160 (Fla. 1993) (habeas petition denied), *cert. denied,* —— U.S. ——, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994).

Marek sought post-conviction relief in state court by filing a motion to vacate judgment and sentence pursuant to Fla.R.Crim.P. 3.850, raising 22 claims for relief. The state trial court conducted an evidentiary hearing on Marek's motion for post-conviction relief. At the conclusion of the hearing, the trial court denied the motion and entered an order detailing its findings regarding the 22 claims for relief which Marek alleged. R.–Vol. XX, Exh. AA–5. Marek then filed a petition for a writ of habeas corpus with the Florida Supreme Court as well as an appeal from the trial court's denial of his Rule 3.850 motion. The Florida Supreme Court affirmed the denial of the Rule 3.850 petition and denied the petition for habeas corpus relief. *Marek v. Dugger,* 547 So.2d 109 (Fla. 1989).

Marek then filed a petition for writ of habeas corpus in federal district court. Following a hearing, the district court denied Marek's petition. This appeal followed. After Marek perfected his appeal to our court, he filed a second petition for habeas corpus relief with the Florida Supreme Court. In this latter petition, Marek alleged numerous grounds for relief.[1] *Marek v. Singletary,* 626 So.2d 160 (Fla.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). The Florida Supreme Court denied Marek any relief, finding all issues, but one, procedurally barred. *Id.*

## II. FACTS

The Florida Supreme Court described the murder of Adella Simmons as follows:

This tragic incident began on June 16, 1983, when the victim and her female companion were returning home from a vacation. The victim's companion testified that when the car in which the two women were riding broke down on the Florida Turnpike near Jupiter, appellant [Marek], who was driving a pickup truck, pulled over; that appellant was talkative and friendly; that he unsuccessfully attempted to fix the car and then offered to take one of the women, but not both, to a service station; that at approximately 11:30 p.m. the victim left with appellant and Raymond Wigley, who was an occupant of the pickup truck; that Wigley had been present during a part of appellant's conversation with the two women but remained silent; and that, during the five days she and the victim were together on their vacation, the victim did not have sexual intercourse.

At approximately 3:35 a.m. the following morning, a police officer patrolling Dania Beach noticed two men walking from the vicinity of a lifeguard shack towards a Ford pickup truck. He testified that he spoke to the men, who identified themselves as Marek and Wigley, for about forty minutes. He noted that appellant was the more dominant of the two; that appellant joked with the officer and interrupted Wigley every time Wigley attempted to speak; and that appellant drove the truck away from the beach when the conversation was completed. Later that morning, the nude body of the 47–year–old victim was discovered on the observation deck of the lifeguard shack. According to medical testimony, the victim had been strangled between approximately 3:00 and 3:30 a.m., and was probably conscious for one minute after the ligature was applied to her neck. Her body was extensively bruised and her finger and pubic hairs had been burned. The medical examiner testified that he found sperm in the victim's cervix and believed she had had sexual

---

**1.** Specifically, Marek asserted that *Espinosa v. Florida,* —— U.S. ——, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and *Sochor v. Florida,* 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), constituted a change of law which permitted a post-conviction challenge to jury instructions; that the use of his contemporaneous kidnapping conviction as an aggravating factor was invalid; that the jury received a constitution-ally inadequate instruction with regard to the heinous, atrocious, or cruel aggravating factor; that every felony would involve, by necessity, the finding of a statutory aggravating circumstance, a fact which, under the particulars of Florida's statute, violates the Eighth Amendment; and that the pecuniary gain aggravating factor was invalid.

intercourse after 11:30 p.m. on June 16. Bruises indicated that the victim had been kicked with a great deal of force. According to the examiner, some of the victim's injuries indicated she had been dragged up to the roof of the lifeguard shack and into the observation tower.

Police issued a "be-on-the-lookout" bulletin to law enforcement agencies for appellant and Wigley. On the evening of June 17, a Daytona Beach police officer, as a result of that bulletin, stopped Wigley, who was driving a truck on Daytona Beach, and found a small automatic pistol in the truck's glove compartment. Approximately one-half hour later in the same vicinity, police took appellant into custody. The victim's jewelry was later found in the truck.

A fingerprint expert testified that six prints lifted from the lifeguard shack matched appellant's fingerprints, and one matched Wigley's. Only appellant's print was found inside the observation deck, where the body was discovered.

The appellant testified in his own behalf that he and Wigley had traveled together from Texas to Florida for a vacation; that he had attempted to fix the victim's disabled vehicle and had offered to take the women to a filling station; that he fell asleep after the victim got into the truck and that when he awoke, she was gone; that he went back to sleep and woke up at the beach, where he found Wigley on the observation deck of the lifeguard shack; and that it was dark in the shack and he did not see the victim's body. Appellant admitted that after he had been incarcerated and a detective told him he had "made it to the big time," he responded: "S.O.B. must have told all."

*Marek v. State,* 492 So.2d at 1056–57.

## III. ISSUES

Although Marek raised 22 claims in his federal habeas corpus petition, he only alleges five claims on appeal.[2] We see no merit to Marek's claims regarding alleged ineffective

---

**2.** Issues not clearly raised in the briefs are considered abandoned. *See Allstate Ins. Co. v.*

---

assistance of appellate counsel and ineffective assistance of trial counsel for failing to provide the mental health expert with certain background information and, therefore, we summarily affirm the district court's judgment on these issues. We also affirm the judgment of the district court denying habeas relief on the remaining claims raised by Marek. We feel compelled, however, to address separately several issues raised by Marek in this appeal.

## IV. DISCUSSION

"In reviewing a petition filed under 28 U.S.C. § 2254, we presume that factual findings made by a state court are correct. We review factual conclusions made by the district court under the clearly erroneous standard. We review mixed questions of fact and law *de novo.*" *Hamilton v. Ford,* 969 F.2d 1006, 1010 (11th Cir.1992) (citations and footnote omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993).

### A. *Ineffective Assistance of Counsel at the Penalty Phase*

Marek alleges that he was denied the effective assistance of counsel at his penalty phase because his counsel failed to present compelling mitigation evidence which may have produced a different outcome—i.e., a sentence of life imprisonment. "Ineffectiveness of representation is a mixed question of law and fact subject to de novo review." *Bolender v. Singletary,* 16 F.3d 1547, 1558 n. 12 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994). A state court's conclusion that counsel rendered effective assistance is not a finding of fact binding on a federal court. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that the identified acts or omissions of counsel were deficient, or outside the reasonable range of professionally competent assistance, and (2) that the deficient perfor-

---

*Swann,* 27 F.3d 1539, 1542 (11th Cir.1994).

mance prejudiced the defense such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Courts need not address both these prongs "if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. at 2069. We begin any ineffective assistance inquiry with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065; *accord, e.g., Atkins v. Singletary,* 965 F.2d 952, 958 (11th Cir.1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . ."), *cert. denied,* —— U.S. ——, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995). "[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.1995) (en banc). "In evaluating ineffective assistance of counsel claims, this court places particular weight on the trial counsel's explanation of trial strategy, proffered at a state trial court or federal district court evidentiary hearing. . . ." *Card v. Dugger,* 911 F.2d 1494, 1509 (11th Cir.1990).

Marek contends that his counsel was deficient in his failure to investigate, develop, and present mitigating evidence regarding Marek's childhood, mental state, and general background. Marek states that his defense counsel should have travelled to Texas, where Marek lived prior to the murder, and interviewed witnesses. At the evidentiary hearing in state court, Marek's counsel, Mr. Moldof ("Moldof"), testified that he made tactical, strategic choices not to present evidence with regard to Marek's past since Marek himself admitted most of the evidence would be negative. *See* R.–Vol. XVII, p. 381. Moldof did secure the assistance of a mental health expert, Dr. Krieger, and through conversations with Dr. Krieger and Marek, counsel collected information regarding Marek's background and early childhood.

The record reflects that Marek was abandoned by his natural family at the age of nine and was subsequently raised by several different foster families. Marek's parents and other family members, however, had little or no contact with Marek for years prior to the murder and counsel strategically determined that their testimony would have little value. The most Marek's parents could testify was that Marek overdosed on his mother's medication when he was eight or nine months old and Marek suffered from a speech impediment. The foster parents who were called to testify at the state evidentiary hearing had no real knowledge of Marek's criminal background but knew Marek had been in trouble in the past. *See* R.–Vol. XVII, pp. 206–260.

At the state evidentiary hearing, Marek called Dr. Krop, a psychologist, who testified that he reviewed medical and school records in anticipation of the Rule 3.850 proceeding. Dr. Krop stated that although he was critical of Dr. Krieger because he could have obtained more information, he ultimately came to the same conclusion as Dr. Krieger, that Marek suffered from a severe anti-social personality disorder. *See* R.–Vol. XVI, pp. 123–188. The state called Dr. Krieger to testify at the evidentiary hearing. Dr. Krieger stated that even with the new evidence presented at the hearing regarding Marek's background he would not have altered his evaluation and assessment of Marek. Moreover, Dr. Krieger stated that he was concerned that Marek may have exaggerated his symptoms and this testimony would not have done the defendant any good. R.–Vol. XVII, pp. 262–309.

Moldof testified at the state evidentiary hearing. *See* R.–Vol. XVII, pp. 312–400. Moldof stated that the defense he presented on Marek's behalf was the "lingering doubt" theory that Marek's codefendant Wigley may have committed the murder. Moldof made a strategic decision not to present an intoxication defense because of the physical evidence at trial and because he did not think the jury would believe Marek's assertion that he consumed several cases of beer on the day of the murder. *Id.* at 358 (juror rolled her eyes when Marek testified that alcohol did not affect him). Moldof did, however, argue intoxication as a mitigating factor to the jury at the penalty phase. Moldof also argued age as a mitigating factor at the penalty phase. Moldof made a tactical decision not

to call Dr. Krieger to testify at the penalty phase because he believed that Dr. Krieger's testimony may have done more harm than good. Dr. Krieger indicated in his report that he thought Marek was malingering and if Dr. Krieger was cross-examined by the state, this information would have come to the jury's attention.

"Under certain circumstances, trial counsel's decision not to investigate family childhood background may legitimately be the product of a reasoned tactical choice." *Francis v. Dugger*, 908 F.2d 696, 703 (11th Cir. 1990) (*relying on Stanley v. Zant*, 697 F.2d 955, 970 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1696, 114 L.Ed.2d 90 (1991). This court has "never held that counsel must present all available mitigating circumstance evidence in general, or all mental illness mitigating circumstance evidence in particular, in order to render effective assistance of counsel." *Waters*, 46 F.3d at 1511. "To the contrary, the Supreme Court and this Court in a number of cases have held counsel's performance to be constitutionally sufficient when no mitigating circumstance evidence at all was introduced, even though such evidence, including some relating to the defendant's mental illness or impairment, was available." *Id.* (examples omitted).

■ "A defense attorney is not required to investigate all leads, however, and 'there is no per se rule that evidence of a criminal defendant's troubled childhood must always be presented as mitigating evidence in the penalty phase of a capital case.'" *Bolender*, 16 F.3d at 1557 (footnote omitted) (*quoting Devier v. Zant*, 3 F.3d 1445, 1453 (11th Cir. 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995)). "Indeed, '[c]ounsel has no absolute duty to present mitigating character evidence at all, and trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel.'" *Bolender*, 16 F.3d at 1557 (citations omitted). The inquiry must be whether the failure to put this alleged mitigation evi-

dence before the jury was a tactical choice by trial counsel. *Id.*[3] If so, this tactical choice must be given a strong presumption of correctness. *Id.*

We are persuaded that Marek's counsel made a reasonable strategic decision not to present to the jury the alleged mitigating evidence of Marek's sad childhood. Moldof testified at the hearing that information on Marek's recent past, "why he left home, might be something of homosexuality which I thought would be very negative to this jury." R.–Vol. XVII, pp. 324, 334. Moldof also noted the nature of the crime and tactically decided that evidence of Marek's troubled past would not "have altered their [the jury's] repugnance in this case." *Id.* at 372–74. Moldof also made a tactical decision regarding Marek's Texas prison records. He did not obtain these records because if he "didn't bring it out probably the State wouldn't be able to get before the jury he [Marek] was ever incarcerated." *Id.* at 336–37.

The record reflects that Moldof conducted a reasonable investigation with regard to mitigation evidence to be presented at the penalty phase of Marek's trial. Marek told Moldof that his background would not generate any helpful mitigating evidence and, in fact, following Dr. Krieger's recommendation and collecting information on Marek's background, Moldof came to the same conclusion. This case is an example of defense counsel's attempt to present, based on tactical decisions, the best possible mitigation to the jury and judge at sentencing. The evidence presented during the state evidentiary hearing convinces us that Moldof's representation fell within the reasonable range of attorney performance.

■ Even if counsel's performance were deemed deficient, Marek fails to show any resulting prejudice from the allegedly deficient performance. *See Strickland*, 466 U.S. at 699–700, 104 S.Ct. at 2071. Given the particular circumstances of this case and the overwhelming evidence against Marek, evi-

---

**3.** The question of whether a decision by counsel was a tactical one is a question of fact. *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991), *cert.*

*denied*, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992).

dence of an abusive and difficult childhood would have been entitled to little, if any, mitigating weight. *See generally Francois v. Wainwright*, 763 F.2d 1188, 1190–91 (11th Cir.1985). Accordingly, Marek fails to satisfy both prongs of the *Strickland* standard and, therefore, the district court properly concluded that Marek's counsel did not render ineffective assistance of counsel.

### B. *Preclusion of Mitigating Evidence*

Marek contends that the sentencing court violated the principles of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), when it precluded Marek from presenting and the jury from considering, evidence of mitigating factors. Marek's claim is threefold. He argues defense counsel was precluded from presenting mitigation to the jury (1) when counsel attempted to introduce a psychological report evaluating Marek and the trial court did not allow the admission of the report because the doctor was available to testify; (2) when defense counsel attempted to argue that Marek's codefendant received a life sentence and thus, Marek should receive equal treatment but the trial court disallowed this argument unless the state could disclose the contents of the codefendant's confession relating to the culpability of each defendant; and (3) when the trial court did not instruct the jury regarding no significant history of criminal activity as a mitigating factor. We will discuss each contention in turn.

#### 1. Dr. Krieger's report

Marek did not raise this particular claim on direct appeal, but raised it for the first time in his post-conviction proceedings in state court. Following an evidentiary hearing, the trial court found this issue to be procedurally barred. Upon review of Marek's Rule 3.850 petition, the Florida Supreme Court affirmed the trial court's decision finding that the issue was procedurally barred because it could have been, but was not, raised on direct appeal. *See Marek v. Dugger*, 547 So.2d 109 (Fla.1989). The federal district court also found this issue to be

procedurally defaulted because it had not been properly and fairly raised in the state courts, relying on *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See* R.–Vol. 4, Exh. 33, p. 5–6. Alternatively, the district court found that:

> The state court refused to allow Marek's psychological report to be introduced into evidence by itself, adjudging the report to be hearsay. Marek's psychologist was available to testify, yet Marek's counsel made a strategic decision not to use the doctor's testimony. There was no limitation on the presentation of this evidence to the jury, hence, no violation occurred.

*Id.* (citations omitted).

A state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claims in state court, or who attempts to raise claims in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506 (1977). "[W]here the state court correctly applies a procedural default principle of state law, *Sykes* requires the federal court to abide by the state court's decision." *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 498 U.S. 832, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990). A federal court is not required to honor a state procedural ruling unless that ruling rests on an adequate and independent state ground. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). If the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests upon a state procedural bar, then the federal court may be barred from considering that claim. *Id.* at 263, 109 S.Ct. at 1043. "However, should a state court reach the merits of a claim notwithstanding a procedural default, the federal habeas court is not precluded from considering the merits of the claim." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). When a state court addresses both the independent state procedural ground and the merits of the federal constitutional claim, the federal court should apply the state proce-

dural bar and decline to reach the merits of the claim. *Id.*

■ Marek may overcome his procedural default by showing cause for the procedural default and resulting prejudice. Cause requires a showing of some objective factor external to the defense, *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), which prevented counsel from constructing or raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991). This Marek has failed to do. Accordingly, we hold that the district court properly concluded that this claim is procedurally defaulted and we decline to reach the merits of the claim. *See Alderman*, 22 F.3d at 1549.[4]

### 2. Evidence of codefendant's sentence

■ Marek also contends that his counsel was precluded from presenting evidence of his codefendant's life sentence in mitigation. A related but different claim was raised on direct appeal. The Florida Supreme Court concluded that Marek's claim that the trial court erred in sentencing him to death in view of the fact that the judge had previously sentenced his codefendant to life in prison for the same offense, was not "cruel and unusual, arbitrary, and unequal." *Marek v. State*, 492 So.2d at 1058. The court observed that the evidence clearly established that Marek was the more dominant of the two. The federal district court determined that this issue was procedurally defaulted and alternatively found that the state court's factual determination that Marek was the dominant actor was entitled to deference pursuant to *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The federal district court concluded that Marek's claim that the sentencing court erred in not allowing mitigating evidence of the disproportionate sentences must be denied. R.–Vol. 4, Exh. 33, p. 5.

The district court properly found this claim was procedurally defaulted because Marek failed to raise this specific claim on direct appeal. Marek raised this claim in his post-conviction proceedings and both the state trial court and the Florida Supreme Court found this issue to be procedurally barred. Marek has failed to show cause for and resulting prejudice from the procedural default. *See Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. Accordingly, the district court properly concluded that the claim was procedurally defaulted. *See* discussion *infra* B. 1.

We note, however, that the district court was correct in affording deference to the state court's finding that Marek was the dominant actor. The record evidence amply supports this finding. Both Marek and the victim's traveling companion testified that Marek was the more talkative; that codefendant Wigley remained in the truck during Marek's attempts to fix the car; that Marek persuaded the victim to get in the truck with the two men; that three witnesses who came into contact with Marek and the codefendant on the beach around the time of the murder testified that Marek appeared to be the more dominant of the two; and that only Marek's fingerprints were found inside the observation deck where the body was discovered. *See Marek v. State*, 492 So.2d at 1058. Thus, in light of this evidence, the alleged mitigating evidence of codefendant Wigley's life sentence may not have been mitigating after all. *See Demps v. Dugger*, 874 F.2d 1385, 1390–91 (11th Cir.1989) (op. of Fay, J.), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990)); *id.* at 1395–96 (Clark, J., concurring). Accordingly, Marek's claim lacks merit.

### 3. No significant criminal history

Marek also contends that the trial court erred in failing to instruct the jury that he had no significant criminal history. The record reflects that at trial, defense counsel sought to have the jury instructed regarding this mitigating circumstance. R.–Vol. IX, Exh. A–11, p. 1284. The trial court ruled

---

4. We hold in the alternative that the claim lacks merit because counsel was not *precluded* from presenting this alleged mitigating evidence. He made a tactical choice not to have Dr. Krieger testify. *See* discussion A *infra*. Since there was

no preclusion, there is no error. *See generally Hitchcock*, 481 U.S. at 394, 107 S.Ct. at 1822. *See also Horsley v. Alabama*, 45 F.3d 1486, 1489 n. 6 (11th Cir.1995).

that if the jury was so instructed, the prosecution would be able to bring up Marek's felony conviction in Texas. *Id.* At that point, defense counsel made a strategic decision not to argue this mitigating factor to the jury. There was no limitation or restriction placed on defense counsel with regard to presentation of mitigating factors. *See Hitchcock v. Dugger,* 481 U.S. at 394, 107 S.Ct. at 1822. Accordingly, Marek is entitled to no relief on this claim.

### C. *Jury instructions on Aggravating and Mitigating Factors*

In determining the appropriateness of the death sentence recommended by the jury, the judge found four aggravating factors and no mitigating factors. The court found that the murder was committed during the course of a kidnapping, a felony involving the use or threat of violence; that the murder was committed while Marek was engaged in the commission of an attempted burglary with the intent to commit sexual battery, and in the course thereof, committed an assault; that the murder was committed for pecuniary gain; and that the murder was especially heinous, atrocious, and cruel.

The state argues, and the district court found, that Marek's allegations regarding the jury instructions on the aggravating factors are procedurally defaulted. On direct appeal, Marek challenged the sufficiency of the aggravating factors, not the instructions. The Florida Supreme Court found all four aggravating factors were proven beyond a reasonable doubt. *Marek v. State,* 492 So.2d 1055, 1058 (Fla.1986). Marek first challenged the jury instructions on the aggravating factors in his Rule 3.850 motion. Thus, the district court concluded that Marek's challenge to the jury instructions was procedurally defaulted because he did not raise this specific claim on direct appeal. *See Sykes,* 433 U.S. 72, 97 S.Ct. 2497.

■ Following the district court's decision and after Marek's appeal to our court, Marek filed a second state habeas petition. Upon review of that petition, the Florida Supreme Court determined that Marek's challenge to the use of his contemporaneous kidnapping conviction as an aggravating fac-

tor was procedurally barred. Furthermore, the supreme court found that the jury instruction on kidnapping as an aggravating circumstance could not have affected the jury's recommendation and that any error was harmless beyond a reasonable doubt. We agree. *See Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The Florida Supreme Court noted that the jury found Marek guilty of kidnapping prior to receiving the instruction on kidnapping as an aggravating factor in the penalty phase and consequently, without receiving the instruction, the jury still had the information concerning Marek's conduct in regard to the kidnapping. Furthermore, we note that even without this aggravating circumstance there were three other aggravating circumstances and no mitigating circumstances. Thus, Marek cannot show that this alleged error had a "substantial and injurious effect" on the jury's determination. *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722 (quotations omitted).

Marek's remaining challenges to the jury instructions on the aggravating factors are procedurally defaulted. Marek fails to establish "cause and prejudice" sufficient to excuse his failure to present these claims on direct appeal. *McCleskey,* 499 U.S. at 493–94, 111 S.Ct. at 1469–70 (1991). However, Marek may make a colorable showing that he is "actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body." *Johnson v. Singletary,* 938 F.2d 1166, 1183 (11th Cir.1991) (en banc) (emphasis in original), *cert. denied,* —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992).

> That is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty.

*Id.* (footnote omitted) (emphasis in original). *See also Sawyer v. Whitley,* 505 U.S. 333, 347

**1304**

n. 15, 112 S.Ct. 2514, 2523 n. 15, 120 L.Ed.2d 269 (1992) (quoting and specifically approving the *Johnson* standard). Marek cannot meet this standard. Regardless of the inapplicability of the aggravating factor that the murder was committed during the course of a violent felony, the kidnapping, the record supports the district court's finding that the remaining aggravating factors are valid. *See also Marek v. State,* 492 So.2d at 1058. The aggravating factor that the murder was committed for pecuniary gain was affirmed by the Florida Supreme Court and must be given deference considering the evidence of the victim's jewelry which was found in the truck Marek was driving. Additionally, the aggravating factor that the crime was heinous, atrocious, and cruel is amply supported by the facts and circumstances of the murder. *See id.* Any reasonable juror would have concluded that Marek's actions fit this description. Accordingly, Marek is still eligible for the death penalty, and the actual innocence exception does not apply.

## V. CONCLUSION

Based upon the foregoing discussion and for the reasons stated in the district court's opinion, we affirm the district court's judgment denying habeas corpus relief.

AFFIRMED.