[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 9, 2008
THOMAS K. KAHN
CLERK

No. 07-13990
Non-Argument Calendar

_____

Agency No. A97-957-801

JIAN GAO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(April 9, 2008)**

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Jian Gao, a citizen of China, petitions for review of the Board of

Immigration Appeals' (BIA) order, adopting and affirming the Immigration Judge's (IJ) order denying asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhumane, or Degrading Treatment or Punishment (CAT), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c). After review of the parties' briefs and the record on appeal, we find no reversible error, and we DENY the petition.

## I. BACKGROUND

Gao arrived in the United States on 24 August 2004. Upon arrival, Gao was served with a notice to appear, charging that (1) he was not a citizen or national of the United States, (2) he was a native and citizen of China, and (3) he was not in possession of a valid entry document, and, thus, he was removable. Gao subsequently filed an application for asylum and withholding of removal, stating that he sought relief on the basis of his nationality, political opinion, and the CAT. In his application, he stated that he was afraid of being jailed in China due to his violation of family planning policies. He stated that he had been through many countries that were unknown to him, and he only knew that he entered the United States by way of France. In response to the question of whether he had been subject to mistreatment in China, he referred to an attached one-page statement, in which he stated that: (1) in February 2004, his girlfriend began vomiting often, and he feared that she was pregnant, but did not take her to the hospital because

2

Chinese law forbade pregnancy before marriage; (2) someone reported his girlfriend to the authorities, "perhaps because people noticed her constant vomit," and, subsequently, three police officers came to their residence; (3) the police told his girlfriend that she was pregnant, in violation of China's family planning policy, and would have to have an abortion; (4) he pushed one of the officers as the officer grabbed his girlfriend, and he then ran away because he feared that the officers would arrest him; (5) he hid at a friend's house, and, three days later, someone told him that his girlfriend had an abortion and that the police were looking for him; and (6) his family arranged for him to leave China on 13 April 2004, and, "[a]fter several setbacks," he arrived in the United States in August 2004. R1 at 304.

At an initial hearing before the IJ, Gao conceded removability and indicated that he wished to seek relief on the basis of his application for asylum. At his removal hearing, Gao testified his girlfriend became pregnant in February 2004, and he knew that she was pregnant because she was vomiting every day, and his mother, who lived in the same house, told him that she was pregnant. When asked why the two did not marry, he stated that they had attempted to marry in November 2003, but, when they went to the "village address office," they were told that they were both under the legal age for marriage. Id. at 104. He stated that, in March 2004, three policeman came to his house to take his girlfriend away and force her to have an abortion because the two had violated the family planning laws. When

3

asked how the police found out about the pregnancy, he stated that he had "no idea, maybe someone reported it." Id.

Gao stated that his girlfriend did not want to have an abortion, and he pushed one of the police officers, and when the police tried to arrest him, his girlfriend's father intervened, which allowed him to escape out of the back door. He stated that the police were at the house for about 20 to 30 minutes before he escaped to his uncle's house, which was one minute away and shared a yard with the house where he and his family lived. He stayed at his uncle's house for 20 minutes, and his uncle gave him some money and sent him to an aunt's house, to which he traveled via a 30-minute bus ride. The next day, Gao's aunt told him that she had spoken with his mother and had learned that his girlfriend had an abortion. Gao stated that he called his house three days later, and his mother told him that the police were looking for him because he hit one of them. The IJ asked him to clarify where he was when the police came, and he stated that his family owned three houses that shared the same yard, and he lived in one of the houses with his girlfriend, and, at the time of the incident, his girlfriend's mother was visiting his house. He stated that he eventually left his aunt's house and traveled to a friend's house in another village, which was near the village where he lived with his parents.

Gao testified that his mother and uncle arranged for him to meet a

4

"snakehead," or human smuggler, who would arrange for him to come to the United States, and his mother borrowed $51,000 from friends and relatives to pay the snakehead. Id. at 118-19. When the IJ asked why it took him four months to arrive in the United States after leaving China, Gao stated that he traveled through several countries and had to use fake passports. He stated that he had been through four to five countries, but he only knew of France, where he stayed for about ten days, and Spain, where he stayed for over a month. When asked why he did not seek asylum in any other country, he stated that the snakehead locked him up in a room and did not let him leave. He testified that he feared that, if he returned to China, the authorities would arrest him, which he knew because his father told him that the police had come to his house looking for him on several occasions. The IJ asked Gao why he did not have a valid passport, and Gao stated that the smuggler had taken his passport, and he believed that it would be difficult to obtain a new one, though he had not attempted to do so. Upon questioning by the IJ, Gao identified a "Household Registration form" that he had submitted into the record, and, when the IJ noted that the form did not contain Gao's "ID number," Gao explained that the form was prepared when he was young and did not yet have such a number. Id. at 125.

In addition to his testimony, Gao submitted a Department of State Country Report on China, which indicated, inter alia, that China has a formal Family

5

Planning Law that restricts childbearing to married couples, and the law is enforced by local authorities who, though prohibited from using physical coercion to enforce the law, often do so. He submitted a State Department report on Chinese asylum claims, which indicated that China's family planning policies retain "harshly coercive elements," and single women are coerced into having abortions. Id. at 226. He also submitted a copy of China's family planning law, a map of the area where he lived, a copy of a Chinese "residential identification" card, bearing his name, and a copy of his family's "Household Register," which contained an entry for himself, but did not list an identification number. Id. at 275, 279.

The IJ denied the application, finding that many elements of Gao's testimony were implausible. Specifically, the IJ found that Gao's statement that he and his girlfriend went to register their marriage, and only then learned that they were under the legal age, did "not have the ring of truth" because Gao knew or should have known the age prior to attempting to register to marry. Id. at 45. The IJ found that Gao did not give any plausible explanation as to how the police knew that his girlfriend was pregnant, noting that Gao stated in his application for asylum that someone probably reported his girlfriend after noticing her vomiting, but, at the hearing, Gao simply stated that "maybe someone talked to them." Id. at 45-46. Furthermore, the IJ found, his story was not credible because vomiting

6

could be the result of "some other type of malady," and the police accused her of being pregnant, but did not state that they wanted to test her. Id. at 46.

The IJ found that Gao's story was "very basic and he does not talk like someone who's actually experienced the events that he's relating." Id. The IJ noted that, while in his testimony, Gao stated that his girlfriend's father intervened to help him escape from the police, he did not include that detail in his written statement. Id. The IJ also found that Gao could not explain why he did not seek asylum in one of the other countries through which he traveled, noting that, although he testified that the smuggler locked him up, "[h]e was certainly not being locked up while he was at the airports" of those countries, where he could have sought out immigration authorities. Id. at 47. Noting further that Gao did not explain in detail what happened in his struggle with the police, the IJ concluded that Gao had not demonstrated that he qualified under the statutory definition of refugee, as he had failed to meet his burden to offer believable, consistent, and sufficiently detailed evidence of his alleged persecution, but had instead offered a "bare-bone, skeleton, generalized story lacking in details." Id. at 48-49.

The IJ further found that Gao had failed to establish his identity. In that regard, the IJ noted that Gao had been in the United States since August 2004 and, thus, had a year and nine months to obtain corroborative evidence of his identity, yet only produced a Xerox copy of a purported ID card and Household Register.

7

Noting that Gao had entered the country by use of fraudulent passports and did not presently possess an authenticated passport, and that document fraud was widespread in China, the IJ stated that it was "not satisfied" with Gao's purported identification. Id. at 50. Relying on the earlier enumerated inconsistencies in Gao's testimony, the IJ found that Gao also had not met his burden to prove the probability standard for withholding of removal or CAT relief. Accordingly, the IJ denied his application for asylum, withholding of removal, and CAT relief.

Gao appealed to the BIA, asserting that the IJ erred in his adverse credibility determination. In his brief on appeal, he again asserted that his testimony had been "consistent and believable," arguing that, while the IJ found that he was unable to explain how the authorities learned of his girlfriend's pregnancy, nothing in the record established that he should have known how they found out, and his testimony at the hearing was consistent with his explanation that someone may have noticed her vomiting. Id. at 15. Gao noted that corroboration is not always required to sustain an applicant's burden of proof, asserting that his testimony was sufficient, and arguing that the IJ did not find that the corroborative evidence that it required was "easily available" and did not give him notice that his proposed evidence would be insufficient. Id. at 16. Gao asserted that officials from the Department of Homeland Security confiscated his original ID card upon his entry to the United States, and he maintained that the IJ lacked a sufficient basis for its

8

implication that his identification documents were fraudulent.

The BIA adopted and affirmed the IJ's decision, finding that the adverse credibility finding was not clearly erroneous, and dismissed Gao's appeal. In addition, the BIA found that, under its own administrative precedent, Gao was required to show "a sufficient nexus between any harm alleged and any resistance he put forth to the imposition of the family planning sanctions and must demonstrate that he has suffered harm amounting to persecution on account of that resistance" to establish that Gao was entitled to asylum relief based on coercive family planning measures imposed upon his girlfriend. Id. at 3. Under that standard, the BIA found, the IJ did not err in its determination that Gao presented insufficient evidence to meet his burden of proof for asylum, withholding of removal, or CAT relief.

## II. DISCUSSION

In his petition, Gao contends that the IJ's adverse credibility finding was erroneous, asserting that his testimony contained no major inconsistencies and arguing that the IJ should have afforded him an opportunity to add details where his testimony was found to be lacking. Gao does not challenge the BIA's finding that, in order to qualify as a refugee on the basis of his girlfriend's subjection to coercive family planning measures, he must show that he was persecuted due to "other resistance" to those measures.

9

The INA's definition of "refugee" includes one "who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42).  We have held that the BIA has reasonably interpreted 8 U.S.C. § 1101(a)(42) by extending that definition to the spouses of women who have been subjected to coercive family measures, but requiring a heightened burden of proof for an alien seeking relief on the basis of an unmarried girlfriend's subjection to a forced abortion.  Yi Qiang Yang v. U.S. Att'y Gen., 494 F.3d 1311, 1316-18 (11th Cir. 2007) (per curiam), petition for cert. filed,(No. 07-756) (U.S. Dec. 6, 2007).

However, Gao does not challenge the BIA's finding that he was required to meet that heightened burden of proof, and the government argues that he has thus waived any challenge to that finding.  Issues not clearly raised in an appellant's brief on appeal are considered waived.  Marek v. Singletary, 62 F.3d 1295, 1298 n. 2 (11th Cir. 1995).  We specifically have applied this rule to an alien's petition for review of the BIA's decision.  See Prado-Gonzalez v. INS, 75 F.3d 631, 632 (11th Cir. 1995) (per curiam).  Ordinarily, Gao would be deemed to have waived any challenge to the BIA's finding that he did not establish that he was persecuted because of "other resistance" to coercive population control measures.  However, because the BIA relied on the IJ's adverse credibility determination for its ultimate

finding that Gao had not met his burden to prove that he qualified as a refugee under that standard, we will review the IJ's adverse credibility determination.

"We review only the [BIA]'s decision, except to the extent that it expressly adopts the IJ's decision. Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA adopted the IJ's decision in this case, in addition to issuing its own decision, we review both decisions. The BIA's and IJ's "findings of fact are reviewed under the substantial evidence test," and we must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (quotation and citation omitted). "To reverse the IJ's [or BIA's] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if he is a refugee within the meaning of INA § 101(a)(42)(A). INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A "refugee" includes any person who is unwilling to return to, and is unable or unwilling to avail himself of the protection of, the country of his nationality or where he last habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). As noted earlier, victims of coercive

11

methods of population control are eligible for asylum relief, and, with our approval, the BIA has extended that protection to husbands, but not to unmarried partners, unless a partner shows that he was persecuted due to "other resistance" to such polices. See Yang, 494 F.3d at 1316-18. An applicant who is unable to satisfy the standards for asylum relief generally is unable to meet the more stringent burdens to prove a likelihood that he will be persecuted or tortured upon return to his home country, for purposes of withholding of removal or CAT relief. See Al Najjar, 257 F.3d at 1292-93, 1303.

An "extremely detailed adverse credibility determination alone may be sufficient to support the IJ's [or BIA's] denial of an asylum seeker's application." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004). Once the IJ has given specific, cogent reasons for its adverse credibility determination, "[t]he burden then shifts to the alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006) (per curiam) (quotation omitted). Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act § 101(a)(3)[1], the IJ or BIA may find an alien adversely credible based on the "totality of the circumstances," and may deny a claim based on

[1]Because the final order of removal was entered after May 11, 2005, the effective date of the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), Gao's petition is governed by that act. REAL ID Act § 106(d).

12

inconsistencies, inaccuracies and falsehoods contained in the evidence, without regard to whether they go to the "heart" of the claim. Chen, 463 F.3d at 1232.

The IJ's adverse credibility finding in this case was extremely detailed. It was based on his findings that: (1) Gao's statement that he and his girlfriend did not know the legal age of marriage before attempting to register did "not have the ring of truth," R1 at 45; (2) Gao did not give any "plausible explanation as to how the authorities would have learned of the pregnancy," id. at 45-46; (3) Gao's story was not credible because vomiting could be the result of "some other type of malady," and the police accused his girlfriend of being pregnant, but did not state that they wanted to test her, id. at 46; (4) Gao's story was "very basic and he does not talk like someone who's actually experienced the events that he's relating," id.; (5) while in his testimony, Gao stated that his girlfriend's father intervened to help him escape from the police, he did not include that detail in his written statement; (6) Gao could not explain why he did not seek asylum while in the airport of one of the many countries through which he traveled; (7) Gao did not explain in detail what happened in his struggle with the police; (8) in general, Gao offered only a "bare-bone, skeleton, generalized story lacking in details," id. at 48-49; and (9) Gao had not produced authenticated documents to established his identity, despite having been in the United States for a year and nine months prior to his hearing. Given these numerous specific and cogent reasons for finding Gao's testimony

13

incredible, including his failure to establish his identity, which Gao does not now contest, the record does not compel a reversal of the IJ's adverse credibility finding. See Mendoza, 327 F.3d at 1287.

While Gao contends that the IJ's individual findings were flawed – specifically, that he should have known the legal age of marriage, he did not explain how the police knew that his girlfriend was pregnant or why they did not try to test her, and he failed to include in his application that his girlfriend's father helped him to escape – the IJ based his adverse credibility finding on those shortcomings and well as the numerous others outlined above, and, thus, under the "totality of the circumstances" test, the record does not compel reversal of the IJ's findings. See Chen, 463 F.3d at 1232-33. The record certainly does not compel reversal of the BIA's finding that the testimony was insufficient to establish that Gao took part in "other resistance" to family planning policies, a standard that Gao has conceded that he does not meet. Yang, 494 F.3d at 1318.

Moreover, although Gao cites caselaw from other circuits for the proposition that an IJ should solicit an explanation from a petitioner where the IJ finds his testimony to be inadequate, and should give a petitioner notice where the IJ finds that corroborative evidence is needed, our precedent contains no such requirement. Therefore, because the IJ's adverse credibility finding was extremely detailed and based upon specific, cogent reasoning, the record does not compel the conclusion

14

that the IJ and BIA erred by determining that Gao was not credible, and, thus, not entitled to asylum relief. Because Gao failed to meet his burden to show eligibility for asylum relief, he has also failed to meet the heightened standards of proof for withholding of removal and CAT relief. See Al Najjar, 257 F.3d at 1303.

## III. CONCLUSION

Gao contends that the IJ's adverse credibility finding was erroneous, asserting that his testimony contained no major inconsistencies and arguing that the IJ should have afforded him an opportunity to add details where his testimony was found to be lacking. Because the IJ and BIA made extremely detailed findings, supported by the record as a whole, that several important portions of Gao's testimony were implausible and overly generic, the record does not compel the conclusion that the IJ and BIA erred in determining that Gao was not a credible witness, and we deny his petition for review. **PETITION DENIED.**