[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 10, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15772
Non-Argument Calendar

_____

BIA  Nos. A96-278-137 & A96-278-138

LUIS FERNANDO BUENO-GOMEZ,
INES EULALIA GONZALEZ-GOMEZ,
DANIELA BUENO-GONZALEZ,
MARIA ALEJANDRA BUENO-GONZALEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(May 10, 2006)

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Luis Fernando Bueno-Gomez ("Bueno")[1] petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") final order denying Bueno asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition for review.

## I. BACKGROUND

On July 23, 2002, Bueno, a native and citizen of Colombia, entered the United States as a non-immigrant visitor for pleasure, with authorization to remain in the United States until January 22, 2003. Bueno remained in the country beyond that date without authorization. On March 11, 2003, the Immigration and Naturalization Service ("INS") issued a Notice To Appear charging Bueno with removability, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

Bueno filed an application for asylum, withholding of removal and CAT relief in which he claimed persecution based on political opinion and membership in a particular social group. Specifically, Bueno claimed that he fears returning to Colombia because he has been persecuted and threatened by the Revolutionary

[1]Bueno's asylum application listed his wife Ines Eulalia Gonzalez-Gomez and two children Daniela Bueno-Gonzalez and Maria Alejandra Bueno-Gonzalez as derivative applicants. Because Bueno is the lead petitioner, we will refer only to him.

Armed Forces of Colombia ("FARC"). At the removal hearing, Bueno conceded removability.

In his application and at the hearing, Bueno claimed that he had been active in the Liberal Party of Colombia since 1994, working in support of political candidates, participating in health brigades and educating the public about voting rights. As part of his political work, Bueno traveled twice a week from Cali where he lived to the rural villages of Caloto and El Palo to check on Liberal Party programs. In 2000, Bueno started a commercial food business with his wife to purchase fruit from the poor in the El Palo area and bring it to the supermarkets, which permitted Bueno to spend more time in the region and continue his political activities for the Liberal Party. Bueno would combine his business trips with his Liberal Party activities, for instance, buying fruit and delivering medicine for the health brigades or attending planning meetings at the same time.

Bueno had been active in the Liberal Party for eight years without being singled out by the FARC. He drew the FARC's attention during the 2002 presidential campaign because he actively supported presidential candidate Alvaro Uribe, who had declared war on the FARC.

In January 2002, Bueno was stopped on the road between Caloto and El Palo by a group of FARC guerrillas carrying rifles. The guerrillas told Bueno that they knew of his political activities for Uribe and that Bueno was interfering with their

3

interests. They told Bueno that he would be declared a military objective if they saw him in the area again. The guerrillas took his fruit truck, but allowed him to leave.

On February 6, 2002, Bueno was traveling on the road from Caloto when he was stopped at a roadblock by FARC guerrillas for thirty or forty minutes and interrogated. The guerrillas had a list of possible military targets and claimed Bueno's name was on the list. The guerrillas warned Bueno to stop his political activities supporting Uribe or he and his family would suffer the consequences. They also told Bueno they knew about his family and that he should be careful and not "denounce it to the police, because it will be easy way to die." Again, the guerrillas let Bueno go.

Bueno reduced his political activity to once every fifteen days or so, but continued with his food business. In May 2002, he received two telephone calls from FARC members who warned him that he was not taking their threats seriously because he had returned to the area. Bueno tried to explain that he was in the area on business, but the caller would not let him talk.

Due to these threats, Bueno stopped all political activity and abandoned his food business. Nonetheless, in June 2002, FARC guerrillas stopped his car while he was traveling in Cali with his wife, mother-in-law and children. The guerrillas took Bueno out of his car and pointed a gun at his head. The guerrillas accused

Bueno of not taking their threats seriously and threatened to carry out reprisals against him and his family. They told Bueno, "We don't want to know anything more about you anywhere" and that he should "evaporate like smoke." The guerrillas told him that if he went to the police he would be assassinated and took his documents and check book. Bueno reported the theft to the police, but did not mention the FARC because he was concerned about FARC infiltration.

Five days later, Bueno received a telephone call from someone claiming to be a "recycling man" who could return his identification and personal documents if Bueno came in person and alone. Bueno became suspicious and disconnected the phone.

After leaving Colombia, Bueno's nephew living in Cali received several phone calls stating that Bueno should not come back if he had respect for his life or the lives of his two daughters. In March 2003, his family in Colombia told him that candidates were no longer able to campaign in the region and that the FARC had posted a list on the walls and columns of the Caloto Path-Valle with names identified as targets. Bueno believes that if he returns to Colombia, the FARC will assassinate him and his family. Bueno's mother and siblings and his wife's mother and siblings remain in Colombia and have not been harmed or threatened.

Bueno testified that the FARC wanted him to leave Colombia. Bueno explained that he had not relocated within Colombia because he believed the

FARC could find him anywhere.[2]  Bueno did not report the FARC's threats to the

Colombian police because he did not believe they could protect him.

In an oral decision, the IJ denied asylum, withholding of removal and CAT

relief.  Specifically, the IJ found that Bueno was not statutorily eligible for asylum

because he had failed to prove either past persecution or a well-founded fear of

future persecution.  The IJ also concluded that Bueno had failed to satisfy the

higher burden necessary for withholding of removal.[3]

Bueno appealed the decision to the BIA.  The BIA affirmed the IJ's decision

without opinion.  Bueno timely filed a petition for review.

## II.  DISCUSSION

### A.  Asylum

An alien who arrives in or is present in the United States may apply for

asylum.  See 8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant

---

[2]Bueno also submitted several reports, including the United Nations High Commissioner for Refugees 2002 report on Colombian asylum-seekers and refugees, the INS Resource Information Center's 2002 report on Colombia and the U.S. State Department's 2002 Country Report on Human Rights Practices in Colombia, in support of his claim that he could not relocate within Colombia because the FARC has a presence throughout the country.

[3]The IJ did not make an explicit finding that Bueno's hearing testimony was not credible. The thrust of the IJ's analysis focused instead on whether Bueno's evidence was sufficient to satisfy eligibility for asylum.  Therefore, for purposes of review, we "assume that any credibility determinations by the IJ were not dispositive of the appeal."  Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

To carry this burden of proving statutory "refugee" status, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. In order to be well-founded, a fear of persecution must be both "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. A finding of past persecution creates the presumption of a well-founded fear of persecution and shifts the burden to the government to demonstrate that either conditions have changed in the alien's home country, or the alien could avoid such persecution by relocating in the home country and that relocation is reasonable. 8 C.F.R. § 208.13(b)(1).

7

**B.      Bueno's Claim**

We conclude, based on the record as a whole, that the IJ's denial of Bueno's asylum application is supported by substantial evidence.[4]  With regard to past persecution, Bueno's treatment at the hands of the FARC does not rise to the level of persecution.  "Although the INA does not expressly define 'persecution' for purposes of qualifying as a 'refugee,' we have discussed other circuits' holdings that 'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) and holding that menacing phone calls and threats to family members and other members of the group do not rise to level of past persecution).  Bueno was stopped by FARC members three times between January and May 2002 and received two threatening telephone calls in May 2002.  Such threats and acts of intimidation, without any harm, do not rise to the level of past persecution.  See Sepulveda, 401 F.3d at 1231 (concluding that petitioner did not show past persecution where she

---

[4]Where, as here, the BIA summarily affirms the IJ's decision without an opinion under 8 C.F.R. § 1003.1(e)(4), the IJ's decision becomes the final agency determination subject to review.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003).  The IJ's legal determinations are reviewed de novo.  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).  The IJ's factual determinations are reviewed under a substantial evidence test, and we must affirm "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar, 257 F.3d at 1283-84 (quotation marks omitted).

received three threatening telephone calls, her brother was threatened in person and a bomb was placed in her work mailbox).

The IJ's finding that Bueno did not have a well-founded fear of future persecution is also supported by substantial evidence. A well-founded fear of persecution may be established by showing (1) past persecution that creates a presumption of a well-founded fear of future persecution, (2) a reasonable possibility of personal persecution that cannot be voided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which he is a part. 8 C.F.R. § 208.13(b)(1), (2), (3)(i).

Because the FARC's harassment of Bueno does not amount to past persecution, Bueno is not entitled to a presumption of a well-founded fear of future persecution. Nor does the record compel the conclusion that there is a reasonable possibility that Bueno will suffer personal persecution if he returns to Colombia.[5] While Bueno's fear of future persecution may be subjectively genuine, there is substantial evidence to support the finding that it is not objectively reasonable given that neither Bueno nor his family has ever been physically harmed. See Al

---

[5]Because substantial evidence supports the finding that Bueno does not face a reasonable possibility of personal persecution, we do not address his arguments regarding whether he showed that he could avoid persecution by relocating within Colombia. See 8 C.F.R. § 208.13(b)(2).

9

<u>Najjar</u>, 257 F.3d at 1289 (explaining that, in order to be well-founded, a fear of persecution must be both "subjectively genuine and objectively reasonable"). Furthermore, much of Bueno's family and his wife's family remain in Colombia and have never been threatened or harmed. Given these facts, we are not compelled to conclude that Bueno has a well-founded fear of future persecution.

Given Bueno's failure to carry his lower burden of proof with regard to asylum, he was not entitled to withholding of removal. <u>See</u> <u>Forgue v. U.S. Att'y Gen.</u>, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (noting that, where an applicant fails to establish a claim of asylum on the merits, his other claims of withholding of removal under the under the INA or for CAT relief generally fail); <u>Al Najjar</u>, 257 F.3d at 1292-93, 1303 (same).[6]

**PETITION DENIED.**

---

[6]On appeal, Bueno did not raise any argument challenging the IJ's denial of CAT relief and, therefore, has abandoned that issue. <u>See</u> <u>Sepulveda</u>, 401 F.3d at 1228 n.2. Even if Bueno had raised the issue on appeal, we would lack jurisdiction to review it because Bueno did not raise it with the BIA, and, thus, failed to exhaust administrative remedies. <u>See</u> INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); <u>see also</u> <u>Fernandez-Bernal v. Att'y Gen. of the U.S.</u>, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).