[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10827
Non-Argument Calendar

_____

Agency Nos. A95-895-076
A79-507-019

ALEJANDRO RONDON,
NIDIA CAMACHO-BUITRAGO,

                                                              Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                              Respondents.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 24, 2006)**

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Colombian natives and citizens Alejandro Rondon, the lead petitioner, and his wife, Nidia Camacho-Buitrago (referred to collectively as "Rondon"), petition for review of the Board of Immigration Appeals' ("BIA") affirmation of the Immigration Judge's ("IJ") denial of asylum, 8 U.S.C. § 1158(a)(1), withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). Rondon challenges the IJ's denial of asylum, arguing that, due to persecution by the National Liberation Army ("ELN"), he had a well-founded fear of persecution and could not relocate within Colombia.[1] For the reasons set forth more fully below, we deny the petition, in part, and dismiss the petition, in part.

## I. BACKGROUND

Rondon's asylum claim was based on four incidents involving the ELN occurring in and around Santa Rosa del Sur, Bolivar. In December 1997, Rondon was threatened by members of the ELN while working on a cocaine eradication project for the Municipal Unit of Technical Assistance of Livestock and

---

[1] Rondon abandoned his withholding of removal and CAT claims by failing to argue them on appeal. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."). Accordingly, these claims are not discussed further.

Agriculture ("UMATA"). When Rondon refused to provide the ELN with any of the money distributed by the project, the ELN commander pointed a rifle at Rondon's head and forbade him to return to the region or he would be killed. In November 1998, while Rondon was working for UMATA on a cattle disease project, a squadron of the ELN said that he could not continue with this work and to leave immediately or suffer the consequences. Rondon explained that this time he was threatened by a different ELN commander from a different front, who did not know the commander from the 1997 incident.

After receiving this threat, Rondon resigned from his work with the government and UMATA and began work with a veterinarian in Santa Rosa del Sur and took care of his own cattle. In addition, from 1999 until a confrontation in June of 2000, Rondon organized an association of cattle growers to help improve production. While en route to a cattle ranch in June 2000, Rondon was stopped at an ELN roadblock and detained one or two hours. Rondon was questioned by the ELN, and, based on the kinds of questions they asked, Rondon realized that they did not know that he previously had been told to leave the region. The ELN also stole his motorcycle. Rondon was freed when there was a confrontation with the army, forcing the ELN to retreat quickly.

The final incident occurred on November 20, 2001, at a farm Rondon purchased in January 2000. Rondon was visiting his parents in his native city of

3

Bucuramanga when guerillas came to his farm. Rondon received a phone call from his farm administrator who said that the guerillas had a list in their hand, asked for Rondon, and, upon learning that he was not there, they killed between 10 and 15 cows and told the administrator, "Tell your *compa* your boss, that is how we're going to finish him, that we're not playing games." Rondon explained that the commander was one he had already met because the commander asked "where Alejandro was." Rondon explained that they wanted to kill him after he resigned his government job because he organized the cattle ranchers' association. Rondon also testified that his parents and three siblings were still in Colombia.

The IJ found Rondon credible and further found that, as a result of his employment with UMATA and the nature of the work he performed for the government, at the very least, Rondon was threatened due to his imputed political opinion. The IJ found that, in the absence of physical harm, Rondon did not establish past persecution. As to the roadblock incident, the IJ found that it did not constitute persecution because it was "more in the area of general country conditions" and not specific to Rondon. As to the killing of Rondon's cattle, the IJ reasoned as follows:

> The only thing that the Court would find in regard to the expectations of risk which are not inherent in [Rondon's] occupation but an individual who does purchase a farm or land in rural areas which are red zones or areas in which the guerillas are active are very much taking the risk that their own properties are going to be attacked and

4

that their own in this case animals will be killed. That, the Court does find is inherent in a person's purchase of private property as in this case as recent as the year 2000 and then being disbelieved because the guerillas are targeting your property or your animals. That also does not amount to past persecution . . . .

The IJ found that, because they had family in Colombia, relocation would have been an option for Rondon and Camacho-Buitrago. The IJ concluded that "the events that [Rondon] has described . . . in light of the possibility of relocation within his own country are insufficient to make a finding that a reasonable person in his circumstances would have a well-founded fear of being persecuted." The BIA affirmed the IJ without opinion.

## II. DISCUSSION

When the BIA summarily affirms the IJ without an opinion, we review the IJ's opinion. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). We review factual determinations using the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation and quotation marks omitted). To conclude that the IJ should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and quotation marks omitted). To the extent

5

the IJ's decision was based on a legal determination, review is de novo.

Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

The Attorney General or the Secretary of Homeland Security has discretion to grant asylum if an alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1)(A). A "refugee" is:

> any person who is outside any country of such person's nationality. . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In order to carry this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). We have noted that persecution is "an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Sepulveda, 401 F.3d at 1231 (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355

6

(11th Cir. 2000)) (alteration in original).  Furthermore, "[n]ot all exceptional

treatment is persecution."  Gonzalez, 212 F.3d at 1355.

Establishing past persecution creates a presumption of a "well-founded fear"

of persecution. 8 C.F.R. § 208.13(b)(1); Sepulveda, 401 F.3d at 1231.  In the

absence of past persecution, "the petitioner must demonstrate a well-founded fear

of future persecution that is both subjectively genuine and objectively reasonable."

Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  "An applicant does

not have a well-founded fear of persecution if the applicant could avoid future

persecution by relocating to another part of the applicant's country . . . and under

all the circumstances, it would be reasonable to expect the applicant to do so."  8

C.F.R. § 208.13(b)(2)(ii); Sepulveda, 401 F.3d at 1231.

Rondon first challenges the finding that he did not suffer past persecution,

arguing that the IJ erred in finding that, because he had not been physically

harmed, he did not suffer past persecution.   Rondon contends that the threats and

the storming of his farm and killing of his cattle constituted past persecution.

The record does not compel the conclusion that Rondon suffered past

persecution.  The IJ reasoned that the guerillas came to Rondon's farm and killed

his cattle due to the inherent risk run by property owners in a guerilla-dominated

area and not due to a protected ground.  While evidence that the guerillas had a list,

asked for Rondon personally, and, after killing his cattle, said they would do the

7

same to Rondon, undermines the IJ's reasoning, there is insufficient evidence of a nexus with a protected ground so as to compel reversal of the IJ's finding. Rondon testified that, following his resignation from the government, the guerillas wanted to kill him due to his organization of the cattle ranchers' association. However, there is no evidence to support his belief. Rondon did not describe anything said by the guerillas who came to his farm that would tie their desire to kill him to a protected ground. Rondon had not previously been threatened for his work with the cattle ranchers' association, and testified that he organized the association until June 2000. Although Rondon was threatened due to his work for the government, Rondon had resigned those positions and, given the three-year gap between the last job-related threat and this incident, the record does not compel the conclusion that Rondon was being persecuted based on his prior work. The two threats do not rise to the level of persecution that would compel reversal of the IJ's decision, Sepulveda, 401 F.3d at 1231, even when one of the incidents involved a gun being pointed at Rondon's head, see Bueno-Gomez v. U.S. Att'y Gen., No. 05-15772, manuscript op. at 4, 8 (11th Cir. May 10, 2006) (unpublished opinion) (holding that stop by guerillas, who pointed a gun at the petitioner's head, along with two other stops and two phone calls did not rise to the level of past persecution).

Rondon also seeks to challenge the IJ's finding that, because he could relocate, he did not established a well-founded fear of future persecution.

8

However, as we are obligated to sua sponte review our subject-matter jurisdiction, we first consider whether we have jurisdiction to consider this claim. Alim v. Gonzales, 446 F.3d 1239, 1252 (11th Cir. 2006).

We review questions of subject-matter jurisdiction de novo. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). This requirement is jurisdictional, and bars review of claims not raised before the BIA. Sundar v. I.N.S., 328 F.3d 1320, 1323 (11th Cir. 2003). The exhaustion requirement gives the BIA the opportunity to discover and correct its own error. Id. at 1325.

In his counseled notice of appeal to the BIA, Rondon argued that the IJ's decision was "based outside of the parameters set forth by the Supreme Court decision of" I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).[2] In his one-page counseled brief, Rondon argued that "what happened to [him]" was on account of actual and imputed political opinion, and that the totality of the circumstances amounted to past persecution. Rondon's brief concluded that, for the aforementioned reasons, he should be granted relief.

---

[2] Cardoza-Fonseca held that an asylum applicant need not show that he will more-likely-than-not be persecuted in order to meet the "well-founded fear" standard for asylum. Cardoza-Fonseca, 480 U.S. at 423, 443, 107 S.Ct. at 1209, 1219.

Based on these arguments, Rondon failed to put the BIA on notice that he was challenging the IJ's relocation finding. Moreover, because Rondon argued that he was entitled to asylum on the basis that he had established past persecution on a protected ground, the BIA could resolve the appeal on the ground that he did not establish past persecution and never reach the IJ's relocation finding. Because Rondon failed to exhaust his administrative remedies by challenging the IJ's relocation finding before the BIA, we lack jurisdiction to consider this claim on appeal. 8 U.S.C. § 1252(d)(1); Sundar, 328 F.3d at 1323.

In light of the foregoing, we deny the petition, in part, and dismiss the petition, in part, for lack of jurisdiction.

**PETITION DENIED, IN PART, DISMISSED, IN PART.**

10