[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11044

Non-Argument Calendar

_____

DENIA YAMILETH TOLEDO-ALVARADO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-184-370

_____

Before BRANCH, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Denia Toledo-Alvarado petitions this Court for review of the BIA's denial of her application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. Because she has not met her statutory burden of proof as to any of these forms of relief, we deny her petition.

## I.

Ms. Toledo-Alvarado is a Honduran native and citizen, and she has two children, one who is a Honduran citizen and is currently in immigration proceedings as well and another child who is a United States citizen. Ms. Toledo-Alvarado arrived at the Texas border in 2013. She was apprehended as soon as she crossed the border by DHS, and DHS commenced a removal proceeding in 2017. She was charged with being inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being in the United States without having been properly admitted.

Before the immigration judge ("IJ"), Ms. Toledo-Alvarado admitted through counsel to the charges and conceded removability. She then filed a defensive application seeking asylum, withholding from removal, and Convention Against Torture ("CAT") relief. At the hearing, Ms. Toledo-Alvarado testified that she left Honduras because she wanted to "escape all the murders and violence happening in [her] family." She explained that the father of

her oldest child used to beat her in Honduras, and she separated from him in 2000, around seven years before she left Honduras. She was robbed a few times, she said, but she never reported the robberies to the police in Honduras. She also testified to being raped in Honduras in 2006, which led to her contraction of HIV. She did not report the rape to the police either. She received medication twice for HIV in Honduras, but she said that she had to stop taking the medication there because she could not afford it. She has since received the proper medication in the United States on a regular basis, taking one pill each day. She was also raped again in Mexico during her journey to make it to the United States.

Beyond her own difficult circumstances in Honduras, Ms. Toledo-Alvarado testified that six of her family members had been killed, including her four brothers, her father, and her nephew. She did not know why some of her family members were killed, while she explained that others of the killings were committed by a "bad family" of "criminals that . . . kill people." Some of the killers are in jail now, according to Ms. Toledo-Alvarado. Ms. Toledo-Alvarado has four sisters and her mother in Honduras, none of whom have experienced violence. The IJ asked why Ms. Toledo-Alvarado did not move to where her sisters lived, since they had been unharmed in that region of Honduras. She responded that the weather was too warm there, and she was not accustomed to it.

When asked what particular social group Ms. Toledo-Alvarado was claiming for purposes of asylum and withholding of removal, her counsel balked at having to identify one but ultimately

explained that her particular social group was her family.  Ms. Toledo-Alvarado's counsel also made passing references to Ms. Toledo-Alvarado's gender and HIV status but never identified these categories as particular social groups.

After hearing the testimony of Ms. Toledo-Alvarado, the IJ held that she did not qualify for any of her requested forms of relief. As to asylum, the IJ held that she had not established a nexus to a protected ground, had not shown past persecution or a well-founded fear of persecution, and had not met her burden for the internal relocation finding.  Because the IJ held that Ms. Toledo-Alvarado failed to meet her burden for asylum, she also necessarily failed to meet her burden for withholding of removal, which requires a greater likelihood of persecution than asylum does.  Finally, as to the CAT claim, the IJ held that Ms. Toledo-Alvarado had not shown that the Honduran government would be unwilling or unable to protect her from future torture, especially in light of the fact that some of the people who killed her family members were in jail and her sisters had never been harmed by bad actors in Honduras.  Thus, the IJ ordered Ms. Toledo-Alvarado removed to Honduras.  The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision.  Ms. Toledo-Alvarado timely appealed.

## II.

Where the BIA adopts the IJ's decision, we review both the IJ's and the BIA's decisions. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).  We review our own subject-

matter jurisdiction *de novo*. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).  We review legal issues *de novo*. *Id.* We review factual questions under the substantial evidence test. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc).  And we usually treat "issues not clearly raised in the briefs" as "abandoned." *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) (internal citation omitted).

### III.

Ms. Toledo-Alvarado has applied for three forms of relief from removal: 1) asylum, 2) statutory withholding of removal, and 3) protection under the CAT.   We will address each in turn.

First, Ms. Toledo-Alvarado seeks asylum based on her membership in the Toledo-Alvarado nuclear family, specifically referring to the fact that several of her male family members have been killed in Honduras and to the high rate of crime in general in Honduras.[1]  To prevail on her asylum claim, Ms. Toledo-Alvarado must

---

[1] Although on appeal Ms. Toledo-Alvarado mentions a new proposed social group of "Female Honduran HIV positive" individuals, she did not clearly delineate that group before the IJ, so we will not review it here.  *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto. *See* 8 U.S.C. § 1252(d)(1).").  The IJ said that even if there were an articulated social group on that ground, and he found that there had not been, the evidence was not particularized as to how HIV status would affect her personally.  We do not pass on that conclusion here, since she did not clearly establish this particular social group.

show that she is a "refugee," either by establishing past persecution on account of "membership in a particular social group" or a "well-founded fear" of future persecution on account of "membership in a particular social group." *Martinez v. U.S. Att'y Gen.,* 992 F.3d 1283, 1290–91 (11th Cir. 2021) (internal quotation marks and citations omitted).  It is impossible to establish a "well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so."  8 C.F.R. § 208.13(b)(2)(ii).  And, when the persecution is not government-sponsored, it is the applicant's "burden [to establish]" that she would be unable to reasonably relocate within her country.  *Id.* § 208.13(b)(3)(i).

The BIA and IJ both found as a matter of fact that Ms. Toledo-Alvarado could relocate to where her sisters lived because they had not been harmed in Honduras and Ms. Toledo-Alvarado's main reason for not wanting to move to live with her sisters was the warmer climate.  Because Ms. Toledo-Alvarado fails to challenge that finding on appeal as to her asylum claim, she has waived that challenge, and thus fails to meet her burden on her asylum claim.

Next, as to the withholding of removal claim, in order to prevail, Ms. Toledo-Alvarado must establish that her life or freedom would be threatened in Honduras on account of her "race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  She must establish that

21-11044               Opinion of the Court                    7

she was either persecuted in Honduras previously or that she would "more likely than not" be persecuted upon returning to Honduras. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005); 8 C.F.R. § 1208.16(b). Again, Ms. Toledo-Alvarado designates her family as her particular social group. The problem with her claim is that she has not established that any violence done to the members of her family was on account of their membership in the Toledo-Alvarado family. Ms. Toledo-Alvarado explained that she did not know why some of her family members were killed and that others were killed by bad people. But she never tied these killings to being a member of the Toledo-Alvarado family. Thus, she has failed to establish the required nexus (the on-account-of requirement) for withholding of removal, and we will not disturb the agency's no-nexus finding under the substantial evidence standard. *See Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (per curiam) (explaining the substantial evidence standard).

Finally, as to Ms. Toledo-Alvarado's CAT claim, to prevail, she must show that torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). To establish that torture would be inflicted, the IJ looks at past torture of the applicant, internal relocation options, evidence of "mass violations of human rights" in the home country, and any other "relevant information." 8 C.F.R. § 1208(16)(c)(3). Ms. Toledo-Alvarado's claim fails under the substantial evidence test because Ms.

Toledo-Alvarado has not established that the government in Honduras acquiesced or consented to or would in the future acquiesce or consent to her being tortured. In fact, the record shows that some of the individuals who killed her family members are now in jail and that other crimes she mentioned were never reported to the government. Moreover, she never explained why it would not be feasible for her to relocate to where her sisters lived. Because Ms. Toledo-Alvarado has not established why she individually would be tortured if removed to Honduras, her CAT claim fails. *See Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007).

For the foregoing reasons, we affirm the IJ's and BIA's decision to deny relief from removal to Ms. Toledo-Alvarado.

**PETITION DENIED.**